So Mr. Bedard, you have reserved three minutes for rebuttal. Do I have that right? That's correct, Your Honor. Am I pronouncing your name correctly? Bedard, yes. Yes. Thank you for that. You may proceed. Good morning, Your Honors. May it please the Court, I'm Edward Bedard, Counsel for Plaintiff Appellants Lingley and Papadopoulos. In Lowe, the Supreme Court said that the publisher's exemption to the IAA does not apply to any publication offering advice that is attuned to its subscriber's specific portfolios and their concerns sent from time to time in response to episodic market activity or that recommends stocks that are sure to go up. So I thought all that was great, but you're moving under state law, right? Not the IAA? That is correct, Your Honor. So there's like a little just sort of throwaway line that you cite a bunch of state analogs. You have a CEG to a Georgia statute and say, yeah, they're all really the same as the IAA. And I looked at the language. It doesn't look the same. Well, Your Honor, at both parties, nobody has disputed in this case so far that the state law helps. Well, that doesn't help us. You could collectively be wrong. We have to be right. And that's fair enough, Your Honor. A number of the cases have also, a number of the states have adopted explicitly. You don't get to rewrite a federal or a state statute by collaboration? Again, Your Honor, there are explicit, a number of these. So why don't we send this back so that the federal court, district court, can consider the state statute that you're really operating on? That would certainly be an option, Your Honor, as well, to vacate and remand so we can address that issue in more detail in front of the district court. Again, that hasn't really been briefed here. More importantly, your opponent says that there's no private right of action under the state statute, that the state statute is about to be enforced by the Attorney General. Perhaps you have no right to rely on New York law at all with regard to the failure to register. Well, that's a possibility. But you don't have that in front of us. This is one of the weirdest cases. I've only been on this court 21 years. My time here pales with regard to my dear colleague to the far right, to my far right. But this is one of the strangest cases. This is about two statutes that are not in front of us that make some reference to a federal statute that has within it a specific amount of investment, underinvestment categories, that says that that federal statute, because of the level of investment, doesn't even apply to these people. But then we're asked to read that federal statute as prohibiting states from enacting registration requirements inconsistent with the exemption. That's what you're asking us to do. And you don't even give us the state statutes. Well, we do cite the state statutes, Your Honor, in the complaint. You don't argue? No, because again, our position is that they are interpreted consistently with at least the two state statutes that are issued so far, because this is a class action that hasn't been certified yet. So we have two plaintiffs, one from Georgia and one from New York. So for purposes of the motion to dismiss, I think those are the state statutes that are relevant to the analysis. You would agree with me that if the New York statute did not have a private right of action, that would be a minimal step to take to resolve this case, wouldn't it? Well, it would be an issue for- We wouldn't have to worry about any, we wouldn't have to consider any of the other things. We wouldn't have to consider the registration or the exemption or any of that, would we? If there's no private right of action, end of case with regard to New York. I would disagree as to Plaintiff Papadopoulos, Your Honor, because he is a Georgia resident. I said New York resident, Coulson. I wasn't trying to trick you. Oh, fair enough, Your Honor. If you said that and then I missed that, I'm sorry. I would agree that if there is no private right of action in New York, that would address it, at least for Mr. Lingley. However, I do think that the analysis of whether seeking alpha is required to register is an important consideration in the analysis of whether there is a, whether it would apply at least to Mr. Papadopoulos. I've got the Georgia statute in front of me. Where in the Georgia statute does it refer to a private right of action or to the remedy of rescission? Well, it doesn't. Forgive me, Your Honor, because there are a number of state statutes escaping me, whether Georgia has an explicit one or not. However, it does say that it has that same sort of void language as the IAA, such that, you know, any sort of contract that's enacted. If somebody has to register and they're engaging in contracts that require or that involve the provision of investment advice, then those contracts are void as well, Your Honor. I mean, I just didn't see that in the Georgia statute. We can, again, find that citation. On the other hand, it seems to me that if we conclude that the arguments that you're making about the federal statute are inept, are not justified, even if the federal statute is not involved, why isn't it enough for us simply to say that the arguments you're making don't carry water? I'm sorry, Your Honor, if I misunderstand the question. Are you asking if we're not correct about the federal statute, does that end the case on the publisher's exemption? Well, it seems to me if you make arguments to us and we find those arguments lack merit, how those arguments fit into the case doesn't really matter because the arguments you're making, if we were to find that the arguments you're making don't do the trick, if they did matter, if they were involved, we would have concluded your arguments don't persuade us. I'm not sure why that's not enough. Well, certainly, Your Honor, both sides, like I said, have agreed that the state statutes are interpreted and consistent with the IAA. And if you don't accept our arguments about the IAA, that certainly would end the appeal on the merits there. I don't think there's any dispute about that. I think the Lowe case gives ample reason to reject your argument. Whether your argument is pertinent to this case or not, what you're arguing is not consistent with what the Supreme Court said in Lowe. Well, I think, Your Honor, that the Lowe case, we have to take the language that Justice Stevens is writing in the majority opinion. He's interacting with Justice White in his concurrence, and he's being vehement that there are certain categories of people that are not included in his definition. And I think taking that seriously, we come to a few rules on both of the elements. But you ignore most of them. You focus on one tiny little thing, but you ignore many different things that were said about the publisher's exception. And you focus on a tiny little segment of it that you think makes a chink that you can get through, but you disregard the others. And that seems to me all we need to focus on to reject your arguments. I'll reserve the balance of my time, Your Honor. Thank you, Mr. Bedard. We'll now hear from Mr. Albertson. Thank you, and good morning, Your Honors. May it please the Court. Jacob Albertson on behalf of Seeking Alpha. Just to address the first question that Your Honors raised, I think you're absolutely right. There is a serious problem with this question of whether the plaintiffs have stated a claim under the applicable state laws. And the third point in our brief goes through our position on that, that there is no private right of action under New York and no claim under any other statute either. And I think the important reason that it's pertinent for our argument, not necessarily for theirs, is that the Investment Advisors Act specifically states that no state shall impose any law that would force registration of someone who would not be required to register under the federal law. So the arguments that we have been making for the inapplicability of the Federal Investment Advisors Act apply with equal, if not greater, force to any of these state analogs. Well, but are you saying that if the IAA doesn't provide for rescission in a situation like this, then state analogs, state legislatures can't provide that remedy? No, Your Honor. Your Honor, what I'm saying is that if a person is not an investment advisor under the definition of the investment advisor under the federal law, then they are likewise not an investment advisor under any state law pursuant to the Investment Advisors Act. So in other words, if seeking out for the- If the exemption, if the federal exemption, if they fit within the federal exemption definitional limits, the state can't create a statute that puts them into an investment advisor registration requirement. That's exactly what I'm saying, Your Honor. Yes, thank you. But so you're asking us to resolve this case by interpreting a federal statute and to say that it preempts or precludes state law claims? Yes. I mean, Your Honor, I think in 15 U.S.C. ADB-3AB1, that's the section I'm referring to which we cite in our papers, which prohibits a state from treating their publisher's exclusion as being narrower than the federal. So to the extent that plaintiffs would make an argument that a state law would permit the classification of someone as an investment advisor because of the non-applicability of the exemption, then that interpretation would be improper based on the federal law. So can you answer my question? It seems to me if we find that the appellant is making arguments about the federal act and the Supreme Court case that interpreted them, and if we find that those arguments don't make sense, are not consistent with the case, why do we have to go any further than that? Why do we have to get into the relationship between state and federal and so on? Would you say arguments are being made to us that are invalid? Absolutely, Your Honor. I think that that's a perfectly valid reason. That's the first point in our argument. There are any number of reasons. We've identified three reasons why the judgment below should be affirmed. I'm just confused. It's one thing if you're saying that the federal statute preempts state law and so there can't be a cause of action here. But I thought you were really arguing or at various points in your brief you seem to be arguing that the federal law is coterminous with the state laws and therefore the interpretation of the federal law should be controlling the interpretation of the state law. To the extent that the federal law sets a floor, Your Honor. So in other words, if someone doesn't qualify as an investment advisor under the federal law, then they can't under the state laws either. Well, that's because of a matter of preemption is what you just said a minute ago. Pursuant to the statute, yes. Right. But I mean, that ought to be the inquiry. I'm not sure why we would be getting to interpret state law based on the assumption or premise of the parties that the state and federal law statutes are the same. And Your Honor, I think our point is not that they're the same. It's merely that because the argument was raised that the publisher's exclusion did not apply to Seeking Alpha, we reject that premise. We say they very much do apply. The publisher's exclusion does include Seeking Alpha. And for that reason, no state law could, as a matter of federal or state law, apply to Seeking Alpha under the Investment Advisors Act. And I'm happy to go through those arguments if Your Honors would like. So state law could be more generous in the exemption from a Seeking Alpha standpoint. Sure, Your Honor. And this is perhaps an academic point. In New York, because there is no private right of action, but in New York, there's the two parts. There's the bona fide and then there's general and regular circulation under the federal law. But in New York, there's no or regular. It's bona fide and general. So someone could technically qualify as an investment advisor under the federal law, but not under New York law because New York law is narrower in that sense. So any of these— But you don't talk about preemption in your brief, do you? Your Honor, it was raised in the section about why it is that we're talking about these federal cases for the purpose of interpreting the law with respect to the plaintiff's claim. But perhaps preemption— I just did a word search. That's the beauty of these things. Oh, yeah. I did a word search. Preempt doesn't show up anywhere in your brief. So whether it's preemption—I'm not sure preemption is the right word. The way I think of it is in the interpretation of the similar language in some of the state statutes. So you're arguing that just we can interpret federal law because state law mirrors it? To some extent. Okay. But then just looking at the statutes, they don't look that much alike. Right. And that's why I say to the extent that a state statute is narrower than federal law, that could be an additional reason for dismissal. And that's what we point out in Section 3 of our argument that New York law, for example, wouldn't allow a cause of action under any circumstances. But because that was not the primary issue raised in the appellant's brief, we first focused on this question of, well, are they subject to the publisher's exemption? And I think the answer is very clearly yes, seeking out if it is a publisher. Well, are they subject to the publisher's exemption as a matter of Georgia, New York, Kansas law? Or are they subject to the publisher's exemption because of preemption? Oh, I see. Yeah. Because of the—so there are a number of reasons why that could be the case. What we have argued in our first section is that because under the federal law they are subject to the exemption, that applies pursuant to the Investment Advisors Act to any state law. According to that section, AB3AB1, that I just read, no state shall pass an Investment Advisors Act that would apply the definition of investment advisor to someone who is excluded under the federal law. All right. Other things you wanted to say? Unless Your Honors have additional questions, I'm happy to cede my time back to the Court. All right. Thank you. Thank you. We'll now hear back from Mr. Verdar for three minutes of Verdar. Thank you, Your Honors. Just a few quick points. I agree with the opposing counsel as far as I think the IA is a necessary first step to determining, again, the state law definitions of whether somebody is required to register. The states, to your point, Your Honor, can be more generous, but they can't be more restrictive. If both the Georgia and the New York statute were more generous with regard to the definition, the argument ought to be about that, shouldn't it? But I take it you take the position that they're coterminous. Well, I think I would say that the Georgia one is coterminous with the federal one. I would say that the New York one is actually more restrictive. I disagree with opposing counsel as far as how the New York exemption applies. In fact, it's not as generous to the publisher as it is. That's correct. But then you've got a constitutional issue, don't you? On the First Amendment issue. Under the statute. Well, I think that would be a First Amendment offense that has been raised here in this case. I don't think it would be a facial issue necessarily with the statute. I think it would be as applied and has been raised yet in this case by seeking alpha, Your Honor. All right. Now, briefly, I think just on the merits of the elements, again, I think taking the entirety of the interplay between Justice Stevens and Justice White and what Justice Stevens is vehemently saying, certain categories of publications are not included. We see under the bona fide element that there's kind of three or four factors that go into it, that a publication needs to meet all of these. It needs to be disinterested and no fraud, of course, which seeking alpha emphasizes. But we think that the publication also needs to be the same for everyone in a substantial way. So the newsletter in Lowe, for example, was the same for everyone. It didn't change in any material way for everybody. Where do you get that from? From the background factor. No, where do you get the proposition that the publication has to be the same for everyone? If somebody asks when you're talking not about a paper publication but about an online thing, one person requests to have it focus on a certain thing, somebody else requests to have it focus on something else, why does that take it out of the publisher's description? Where do you see authority for that? I see authority in Lowe itself, Your Honor. What words of Lowe? Individualized advice attuned to any specific portfolio, because Justice Stevens is clear that he's not addressing whether the advice itself on a stock-by-stock basis needs to be individualized. But this won't be the same for two people who ask the same question or for two people who come and have the same portfolio and they want the thing to focus on their portfolio. They'll get exactly the same, right? But I would say that's no different than anybody who has the exact same portfolio. Personalized doesn't depend solely on what your portfolio is. Personalized depends on all kinds of factors. I see my time has expired, Your Honor, but if I may, I might answer your question. I do think that the advice itself does not necessarily need to change on a stock-by-stock basis. That the tip sheet, for example, can provide the same advice to everyone, but I think under the bona fide element, which is its own independent element that also needs to be met, seeking alpha here is taking, compiling advice that is specific to each of its subscribers, even if on a stock-by-stock basis it's not individualized. Thank you, Your Honor. All right, thank you both. We will reserve decision.